```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ALTVATER GESSLER – J.A. BACZEWSKI              :
INTERNATIONAL (USA) INC., and ALTVATER         :
GESSLER – J.A. BACZEWSKI GmbH                  :
                                               :
                Plaintiffs                     :
                                               :         06 Civ. 6510 (HB)
        - against -                            :
                                               :         OPINION & ORDER
SOBIESKI DESTYLARNIA S.A., ADAMBA              :
IMPORTS INTERNATIONAL, INC., INTERNET          :
WINES & SPIRITS, INC., and DOES 1-20,          :
                                               :
                Defendants.                    :
------------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., United States District Judge:**

Plaintiffs Altvater Gessler-J.A. Baczewski International (USA) Inc. ("Gessler USA") and Altvater Gessler-J.A. Baczewski GmbH ("Gessler GmbH") (collectively, "Gessler") are closely held corporations owned by members of the Gessler family. Gessler, which manufactures and sells alcoholic beverages, is the corporate continuation of two businesses that have been in existence since the 18th Century. One of the products that Gessler makes is a honey liqueur known as "krupnik," which is manufactured using a secret family recipe that dates back over a hundred years. Gessler registered the word "KRUPNIK" as a trademark with the Austrian Patent Office in 1960, and has manufactured krupnik in the United States and elsewhere in the world since the early 1960s. During the 1990s, Gessler USA entered into two written agreements with a Polish company, Polmos, authorizing it to produce krupnik using the secret Gessler family recipe.

Thereafter, in 2003, Defendant Sobieski-Destylarnia S.A. ("Sobieski"), a Polish corporation, acquired rights in Polmos. At that time, according to Gessler, Sobieski gained unauthorized access to Gessler's secret recipe for krupnik. Gessler alleges that in January 2006, it discovered advertisements on Sobieski's website that "trad[e] upon the goodwill, trade name, trademark, and historic reputation" of Gessler and refer to Gessler's historic Baczewski Distillery. The advertisements allegedly claimed that Sobieski's krupnik was made using Gessler's secret recipe. Gessler then discovered that

1

Sobieski was importing its krupnik into the United States through an alleged agent, Defendant Adamba Imports International, Inc. ("Adamba") which has offices located in Brooklyn, New York.

Gessler commenced this action on August 28, 2006, and filed its Amended Complaint on November 1, 2006. It named as defendants Sobieski and Adamba, as well as Internet Wines & Spirits, Inc., an Illinois corporation that sells alcoholic beverages in the U.S., and John Does 1-20, whom Gessler asserts are individuals and entities "behind the wrongful acts of Defendants." Am. Cplt. ¶ 8. The Complaint seeks damages for (1) violations of section 43 of the Lanham Act, 15 U.S.C § 1125; (2) common law trademark infringement; (3) deceptive trade practices pursuant to N.Y. Gen Bus. L. § 349; and (4) unjust enrichment; Gessler also seeks declaratory relief.

Sobieski moved to dismiss for improper venue, arguing that Gessler was bound by the forum selection clauses contained in the licensing agreements between Gessler USA and Polmos. On May 3, 2007, this Court granted Sobieski's motion and dismissed the case. Gessler appealed. On appeal, the Second Circuit reversed, based on a case that was issued after this Court had rendered its decision. *See Altvater Gessler-J.A. Baczewski International (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007)). The Second Circuit found that dismissal was improper because the forum selection clauses relied upon by Sobieski did not cover the subject matter of Gessler's claims in this litigation. *Id.* at 90. Although Poland was designated as the venue for all claims "resulting from" the licensing agreements, the Second Circuit held that Gessler's claims were not covered because they did not sound in contract and therefore did not "result[] from" the licensing agreements. *Id.* at 91. Sobieski urged the Second Circuit to affirm this Court's dismissal on the alternative grounds of lack of personal jurisdiction or failure to effect service of process, but the Second Circuit decided that in light of the limited record on appeal, those issues were best addressed by this Court. *Id.* A further recitation of the facts of this case is provided in the Second Circuit's opinion. *See id.* at 88-89.

Upon remand, Defendant Adamba filed an amended answer to the Complaint and asserted cross-claims against Sobieski. Sobieski renewed its original motion to dismiss the Complaint, and moved to dismiss the cross-claims, on two grounds: (1) lack of

personal jurisdiction and (2) failure to effect service of process.  After the motion was filed, but before it was fully-briefed, this Court granted Gessler's request to take jurisdictional discovery, after which the parties submitted supplemental briefs setting forth their findings on the jurisdictional arguments.  For the reasons set forth below, Sobieski's motion to dismiss is denied.

## I.  DISCUSSION

### A.  Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of a service of summons must be satisfied."  *Dynegy Midstream Serv., LP v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2005) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).  Thus, as a threshold matter, I must resolve the question of whether Gessler has effected proper service upon Sobieski.  Sobieski offers three reasons why Gessler's service of process was insufficient:  (1) service was attempted upon the wrong entity; (2) service was attempted via mail; and (3) the necessary proof of service was not filed with this Court.

Gessler has made several attempts to perfect service upon Sobieski.  On November 10, 2009, Gessler filed a certificate of service showing that service was accomplished on December 12, 2006 upon Sobieski Destylarnia S.A. at "ul. Bellottiego 1," in Warsaw.[1]  The certificate states that service was effected in accordance with one of the methods authorized by Article 5(b) of the Hague Convention, and specifies that service occurred "via the post office with the acknowledgment of receipt."  A form entitled "Acknowledgement of Receipt" was appended to the certificate, in both the Polish original and the English translation.  The form specifies that correspondence from a District Court in the United States, bearing docket number 06 CV 6510, was delivered by certified mail "to the person authorized to accept the correspondence."  In the box marked "sender," the form bears a stamp for the Warsaw District Court; in the space for the recipient, the stamp reads "Sobieski" in large letters and provides an address of ul. Bellottiego 1; it is signed and dated Dec. 12, 2006.

---

[1] Gessler appears to have filed this certificate of service in response to Sobieski's allegation that Gessler had not filed the necessary proof of service as required by Federal Rule of Civil Procedure 4 and Article 6 of the Hague Convention.  *See* Docket No. 62.

In its moving papers, Sobieski argues that service upon Sobieski Spolka z.o.o., the entity served in December 2006 in Warsaw, is insufficient to impute service upon Defendant Sobieski Destylarnia, which is located in Starogard Gdansk. Although Gessler contends in its briefs that the two entities are so closely related that service in Warsaw was sufficient, it recently filed a second certificate of service, reflecting service of the summons and complaint on March 16, 2010, upon Destylarnia Sobieski SA.[2] This time, Gessler requested personal, in-hand service, which was accomplished when the documents were delivered by hand to Dawid Bozenski at Destylarnia Sobieski SA, ul. Skarszewska 1, 83-200 Starogard Gdanski. The certificate of service was stamped and signed by the President of the District Court in Starogard Gdansk. This is precisely the manner and place of service that Sobieski argues Gessler should have used at the commencement of the action.[3]  *See* Def's Supp. Br. Jurisdiction 3-4.

The remaining question is whether service was proper in light of the long delay between the filing of the Complaint in August 2006 and effective service of process upon Sobieski in Starogard Gdansk in March 2010. Federal Rule of Civil Procedure Rule 4(m) exempts service in foreign countries from the general 120-day time limit for serving a summons and complaint. The Second Circuit holds that the exception is inapplicable only "where party did not attempt service within the 120-day time limit and 'ha[d] not exactly bent over backward to effect service.'" *Paraguay Humanitarian Foundation, Inc. v. Banco Central Del Paraguay*, 2010 WL 567336 (2d Cir. 2010) (quoting *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985)). In *Paraguay Humanitarian*, the Second Circuit ruled that a district court did not abuse its discretion to dismiss a

---

[2] *See* Docket Nos. 86, 89. Gessler filed a declaration purporting to append the new certificate of service on April 21, 2010; however, due to a filing error, the actual certificate of service was not filed until June, at the Court's request.

[3] Sobieski argues continually that service by mail was improper because Poland objected to that method of service when it joined the Hague Convention. Sobieski is correct that Poland's ratification of the Convention was subject to its reservation as to Article 10, which provides for service by mail *from abroad*. However, service upon Sobieski on December 12, 2006 was accomplished pursuant to Article 5 of the Convention, as reflected on the Certificate of Service. Poland's reservation as to Article 10 of the Convention does not affect service by mail when it is accomplished, as here, through the Polish Central Authority. *See* Hague Convention on Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, available at http://www.hcch.net/index_en.php?act=conventions.listing (last accessed Jun. 30, 2010).

complaint where, after two and a half years, there had been no attempt to effect service, and no explanation was offered as to why service had not occurred. *Id.* Here, by contrast, Gessler attempted service by serving the Sobieski entity in Warsaw on December 12, 2006, which is within the 120-day period after the filing of the Complaint required by Rule 4(m). Counsel for Sobieski entered their appearance the next month, indicating that Sobieski received notice of the action. Although service may not have been perfected until Sobieski Destylarnia was served in Starogard Gdansk, it is clear that from the start: (1) Gessler showed diligence in its efforts to serve and (2) there was no prejudice to Sobieski from the delay, because it received the Complaint shortly after it was filed, and soon filed its appearance in this action. *See Crysen/Montenay Energy Co.*, 166 B.R. 546 (S.D.N.Y. 1994). Gessler has properly served Sobieski; therefore, this Court will not dismiss on the basis of ineffective service of process.

### B. Personal Jurisdiction

Sobieski moves to dismiss all claims against it based upon a lack of personal jurisdiction. On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendants. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir.2005); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999). The general rule, when no discovery has been completed, is that a plaintiff need only make a *prima facie* showing of jurisdiction at the motion to dismiss stage; however, where discovery on the issue of jurisdiction has been completed, a plaintiff bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists. *Pieczenik v. Dyax Corp.,* 2000 WL 959753 (S.D.N.Y. Jul. 11, 2000) (citing *Landoil Resources Corp. v. Alexander & Alexander Services*, Inc., 918 F.2d 1039, 1043 (2d Cir.1990)). Here, the parties have completed a limited amount of jurisdictional discovery, but this Court has not held an evidentiary hearing on the issue. Personal jurisdiction is necessarily a fact-sensitive inquiry dependent on the particulars of the case before the court. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108.

Where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process. *PDK Labs*, 103 F.3d at 1108; *see also Sunward Elecs.,*

*Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  The federal statute at issue here, the Lanham Act, does not authorize nationwide service of process.  *See ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001) (no provision in statute addresses nationwide service); 15 U.S.C. § 1125.  Therefore, this Court applies the personal jurisdiction rules of the State of New York.

The jurisdictional analysis is a two-step inquiry.  First, this Court must determine whether the plaintiff has shown that the defendants are amenable to service of process under New York law.  Second, we must assess whether the assertion of jurisdiction comports with the requirements of constitutional due process.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

**1. Personal Jurisdiction Pursuant to the New York Long-Arm Statute**

Gessler asserts that personal jurisdiction over Sobieski exists pursuant to New York's long arm statute, CPLR § 302(a), but does not specify which of the three distinct provisions of that statute confers jurisdiction.  Adamba argues that jurisdiction exists pursuant to CPLR § 302(a)(1), the provision that the Court applies here.

*CPLR § 302(a)(1).*  This provision provides, in relevant part:  "[A] court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent...transacts any business within the state or *contracts anywhere* to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1). Most courts applying the statute evaluate whether a non-domiciliary defendant "transacts business" by purposefully availing himself of the privilege of conducting activities within New York.  *See, e.g., Trabucco v. Intesa Sanpaolo, S.p.A.*, -- F.Supp.2d --, 2010 WL 991621 (S.D.N.Y. Mar. 19, 2010).

However, a court may also extend personal jurisdiction pursuant to section 302(a)(1) to a defendant who contracts elsewhere "to supply goods or services within the state," as Adamba urges this Court to do here.  "This provision captures cases where there are minimal contacts in New York, and for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Bank Brussels Lambert v. Fiddler Gonzalez Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999).  "Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-

6

arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state." *Id; see also Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F.Supp.2d 202, 210 (E.D.N.Y. 2006). Furthermore, under New York law, an out-of-state F.O.B. designation in a contract to deliver goods into New York state does not foreclose operation of the "contracts anywhere" prong of section 302(a)(1). *See Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F.Supp. 712, 718 (E.D.N.Y. 1996); *Cavalier Label Co. v. Polytam*, 687 F.Supp.872, 877 n.2 (S.D.N.Y. 1988).

At the time the Complaint was filed, and for several years prior, Sobieski's allegedly infringing krupnik was widely available in New York. It was purchased in 2006 at liquor stores in the Bronx and on Long Island. Ex. DE-48. It was also procured though a direct order from Adamba, which is located in Brooklyn. Ex. DE-49. Although Sobieski argues that it had no contract with any of its U.S. distributors, it sent dozens of invoices and many letters to Adamba during 2006 and the years preceding. See Adamba Ex. F, G. In addition to individual vendors in New York and elsewhere, Sobieski's products were sold through a number of nationwide internet vendors.[4]

It became clear during jurisdictional discovery that Sobieski manufactured krupnik directly in response to orders from Adamba, and even created "export guides" summarizing information to be included on bottles shipped to its distributors, including Adamba, in the United States. Zimny Dep., 68-79. Both Ryzsard Bilski, the Chairman of Sobieski's Board of Directors, and Kasimir Zimny, the head of manufacturing, testified that Sobieski manufactures krupnik in response to requests from its "customers" abroad, and acknowledged explicitly that Adamba was among the companies to which krupnik was shipped. Bilski Dep. 43; Zimny Dep. 69.

Sobieski sent Adamba dozens of invoices for purchases of krupnik during the period of the alleged trademark infringement. Although the purchases were made "F.O.B. Gdynia," meaning that ownership of the goods was turned over to Adamba in Gdynia, a Polish port, it is clear that Sobieski contracted with Adamba to provide krupnik

---

[4] *See* Pl. Mem. Opp. at ¶ A(9), which lists the following websites: www.internetwines.com/rws16126.html; www.beerwinevodka.com/products/krupnik.htm; www.thedrinkshop.com/products/nlpdetail.php?prodid=1155; and alleges the existence of other internet sites that Gessler alleges sold Sobieski products.

7

for sale in New York.  Krupnik sold through Imperial Brands was delivered "EXW Starogard Gdanski," which indicates "ex works" delivery pursuant to which the purchaser took possession at the Sobieski facility in Poland. *See* Adamba Ex. G.  Sobieski's ownership of krupnik shipped "F.O.B. Gdynia" or "ex works" ended before the krupnik reached New York; however, New York permits its long-arm statute to reach defendants who contract to ship goods into this state, even where the F.O.B. designation is elsewhere. *See Laumann Mfg. Corp.*, 913 F.Supp. at 718.

Sobieski claims that that it is not amenable to jurisdiction because the "*maximum* number of cases of Krupnik manufactured by Sobieski bearing U.S. government warnings for the five-year period of 2001-2006 was approximately 3,600."  Sobieski Jurisdiction Br. 6; Zimny Dep. 44:20-45:4.  The maximum number of other Sobieski products bearing the warning labels was 1,500,  (Zimny Tr. 46:5-15) for a total overall, of at least 5,100 cases of product bearing U.S. Government warning labels sent to customers throughout the United States.  Although not all of these cases of krupnik were delivered to customers in New York, it is clear that numerous purchases of the liqueur occurred within this state.  "Even if a defendant never enters the state to negotiate one of the contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods…in the state." *Bank Brussels*, 171 F.3d at 789.  Accordingly, I find that this Court may exercise jurisdiction over Sobieski pursuant to section 302(a)(1) of New York's long-arm statute.

### 2. Jurisdiction Satisfies Constitutional Due Process

In light of the conclusion that New York's long-arm jurisdiction statute reaches Sobieski, this Court must determine whether the exercise of jurisdiction comports with the Due Process requirements of the Fourteenth Amendment.  To make this determination, courts apply a two-step analysis in any given jurisdiction case.  "First, we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Dardana Ltd. v. Yugansknefegaz*, 317 F.3d 202, 207 (2d Cir. 2003).  If the defendant has sufficient minimum contacts, "we proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case." *Id.*  A

court must balance the strengths and weaknesses of the two due process requirements: "Depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

### *a. Minimum Contacts*

Due process requires that a non-resident defendant have "certain minimum contacts [with the forum] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984). If the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," it may reasonably anticipate the prospect of defending a suit in the forum state and therefore asserting jurisdiction would comport with the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, (1980) (citation omitted).

The minimum contacts inquiry requires courts to distinguish between cases involving specific jurisdiction, where a court exercises personal jurisdiction arising out of or related to the defendant's contacts with the forum, and general jurisdiction, where a court can exercise jurisdiction over a non-resident based on general business contacts with the forum. *Metro. Life*, 84 F.3d at 567-68. "Specific jurisdiction is determined by first asking if the claim arises out of or relates to defendant's contacts with the state, and then showing that defendant purposefully availed itself of the privilege of doing business in the forum so that the defendant could reasonably foresee being haled into the forum's courts." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo S.R.L.*, 264 F.3d 32, 37-38.

Gessler's allegations are sufficient to demonstrate that Sobieski has minimum contacts with New York. In addition to shipping krupnik to its New York distributor, Adamba, Sobieski specifically manufactured krupnik in response to orders from Adamba. The company also created "export guides" that showed that Sobieski produced krupnik specifically for customers in New York. Zimny Dep. 55, 66-69. It is clear that Sobieski targeted not only American customers, but the New York market specifically.

Sales of krupnik in New York demonstrate Sobieski's plan to purposefully avail itself of the privileges of conducting business in this state, as well as elsewhere in the United States. In the years prior to the filing of the Complaint, Sobieski registered several marks with the United States Patent and Trademark Office. *See* Ex. C-13. Gessler alleges that Sobieski registered a word mark, describing a product made of honey, on October 11, 2005 for the purpose of marketing its krupnik. *Id.* On June 1, 2004, June 15, 2006, and July 18, 2006, it registered additional marks for the purpose marketing its products in the United States. *Id.* More importantly, several Sobieski-owned marks were registered with the New York Division of Alcoholic Beverage Control, including Polmos Alcohol, Polmos Cordials & Liqueurs, Polmos Wisniak, Polmos Wisniowka. *See* Ex. C-6. Finally, it bears noting that the offending product, Sobieski krupnik, was also registered with the Division of Alcoholic Beverage Control. *Id*. Although intellectual property rights *alone* might be insufficient to establish personal jurisdiction over Sobieski, *see See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 Fed. App'x 518, 522-23 (6th Cir. 2006), registration of marks and brand names makes the cheese more binding, and further demonstrates Sobieski's contacts with New York. Because Sobieski "purposefully availed itself of the privilege of conducting activities in the forum state," *World-Wide Volkswagen* 444 U.S. 286 at 297, it could have reasonably anticipated the prospect of defending a suit here.

### b. *Reasonableness*

Once a court determines that there are adequate minimum contacts with the United States, the court must determine whether it is "reasonable" to exercise jurisdiction. A court must ensure that its exercise of jurisdiction "comports with traditional notions of fair play and substantial justice." *Metro. Life*, 84 F.3d at 568. This final inquiry depends on weighing the following factors: "(1) the burden that the exercise of jurisdiction will impose on defendant, (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* (citing *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113-14 (1987)).

"Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between'" *Gucci America, Inc. v. Frontline Processing Corp.*, 2010 WL 2541367 (S.D.N.Y. Jun. 23, 2010) (quoting *Metro. Life*, 84 F.3d at 575). Here, litigating in New York places a moderate burden on Sobieski. Although its more recently-established contacts could not be taken into account as part of the minimum contacts analysis, the company's decision to expands its business here indicates that its burden has only lessened since the Complaint was filed.[5] Although Gessler is not a New York company, its US division is based nearby in Fort Lee, New Jersey. It does not have any presence in Poland that would facilitate litigation there. Furthermore, Gessler chose this forum nearly four years ago and has litigated actively to keep this case in this Court. Finally, as a matter of policy, this Court has an interest in preventing trademark infringement with respect to both federally-registered marks and those registered in New York State.

### III.     Conclusion

For the foregoing reasons, I conclude that (1) Plaintiff has effected service of process upon Defendant Sobieski; and (2) this Court may exercise personal jurisdiction over Sobieski. Accordingly, Sobieski's motion to dismiss pursuant to Rule 12(b) for ineffective service of process and lack of personal jurisdiction is DENIED. Sobieski's motion to dismiss the cross-claims on the same basis must also be denied. The parties are directed to proceed in accordance with the Pretrial Scheduling Order of March 23, 2010. The Clerk of Court is directed to close this motion.

**IT IS SO ORDERED.**
New York, New York
July  16 , 2010

_____
U.S.D.J.

---

[5] Sobieski vodka is marketed in a promotional partnership with Madison Square Garden in New York, Ex. C(4); it conducts promotional events at restaurants in Manhattan and Brooklyn, Ex. C(5); it has entered into marketing and public relations agreements with several New York firms, Ex. C(9), C(10); and has promoted its products through media coverage in the New York Metropolitan area, Ex. C(11).

11