UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ALTVATER GESSLER – J.A. BACZEWSKI            :
INTERNATIONAL (USA) INC., and ALTVATER       :
GESSLER – J.A. BACZEWSKI GmbH                :
                                             :
                    Plaintiffs               :
                                             :      06 Civ. 6510 (HB)
      - against -                            :
                                             :      OPINION & ORDER
SOBIESKI DESTYLARNIA S.A., ADAMBA            :
IMPORTS INTERNATIONAL, INC., INTERNET        :
WINES & SPIRITS, INC., and DOES 1-20,        :
                                             :
                    Defendants.              :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., United States District Judge:**

Defendants Sobieski Destylarnia ("Sobieski") and Adamba Imports Int'l, Inc. ("Adamba") (collectively "Defendants") filed post-trial motions against Plaintiffs Gessler of Baczewski Int'l Inc. and Gessler of Baczewski GmbH (collectively, "Gessler") seeking monetary sanctions and recovery of attorneys' fees and costs. For the reasons set forth below, Defendants' motions for sanctions and attorneys' fees are DENIED, and their motions for costs are GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

On August 28, 2006,[1] Gessler filed suit against Sobieski and Adamba, the manufacturer and importer of Old Krupnik Polish Honey Liqueur ("Sobieski's Krupnik"), respectively, alleging false advertising, trademark infringement, deceptive trade practices, and unjust enrichment.[2] Gessler initiated suit after discovering internet advertisements associated with Sobieski's Krupnik, in which an image of Sobieski's Krupnik appeared in close proximity to the description, "[o]nce produced by the famous Baczewski Distillery of Lwow, Poland, Krupnik is produced today according to its original recipe by Starogard Distilleries of Gdanks" (the "Accused Text"). Specifically, Gessler brought claims in connection with the Accused Text's reference to "Baczewski," to which Gessler asserts

---

[1] Gessler commenced this action on August 28, 2006 and filed its Amended Complaint on November 1, 2006.
[2] Internet Wines and Spirits, Inc. and John Does 1-20 were also named as defendants in the same lawsuit, but no post-trial motions were filed by these defendants and therefore that are not addressed in this opinion.

trademark rights, and the Accused Text's reference to "original recipe," which Gessler asserts is its own trade secret recipe for Gessler's Krupnik ("Gessler's Recipe").

The case was tried before a jury, and on November 12, 2010, the jury returned a verdict in favor of Defendants on all counts.  Currently before the Court are Sobieksi's and Adamba's post trial motions to (i) impose monetary sanctions on Gessler in the form of attorney's fees and costs pursuant to Rule 11; (ii) recover attorneys' fees and costs pursuant to § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) (2006); and (iii) recover costs pursuant to Rule 54.  Additionally, Adamba independently moves for a partial recovery of attorneys' fees and costs pursuant to Rule 68.  For the following reasons, Defendants' motions for sanctions and attorneys' fees are DENIED, and their motions for costs are GRANTED IN PART AND DENIED IN PART.

## II.    DISCUSSION

### A.  Motions for Rule 11 Sanctions

#### 1.  Legal Standard

Rule 11 requires that every attorney who affixes his signature to a pleading, motion or other paper to a court certify that, *inter alia*, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b).  Rule 11 imposes on each person who signs a court document "an affirmative duty . . . to conduct a reasonable inquiry into the viability of a pleading" before signing it.  *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990) (quoting *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)).  It is also a violation of Rule 11 to continue to espouse a position that is "no longer tenable."  Fed. R. Civ. P. 11, Advisory Committee Notes for 1993 amendments. The Second Circuit applies "an objective standard of reasonableness" to determine whether Rule 11 has been violated.  *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996).  In particular, a party violates Rule 11 if it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway Const. Corp.*, 762 F.2d at 254; *see also O'Malley*, 896 F.2d at 706.  Thus, the

standard for Rule 11 sanctions is particularly high, such that "[s]anctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings*, 347 F.3d 370, 388 (2d Cir. 2003) (internal quotation marks and citations omitted). Moreover, "when divining the point at which an argument turns from merely losing to losing *and* sanctionable . . . [courts must] resolve all doubts in favor of [the party facing Rule 11 sanctions]." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original) (internal quotation marks and citations omitted).

## 2. Sobieski's Motion

Sobieski argues that Gessler violated Rule 11 by failing to conduct a reasonable pre-filing investigation of the facts necessary to support its claims and by electing to proceed with trial after discovery, when Gessler should have realized that its claims were no longer tenable.[3] Although Gessler did not ultimately prevail at trial, Sobieski has not met its burden of showing that Gessler's claims had no chance of success, or that Gessler's allegations were utterly lacking in support.[4]

With respect to Gessler's false advertising claim under § 43(a) of the Lanham Act,[5] Sobieski argues that Gessler did not conduct a reasonable pre-filing investigation because Gessler had no evidence that Sobieski created or used the Accused Text. Sobieski further contends that Gessler violated Rule 11 by continuing to pursue its false advertising claim after being made aware of facts prior to trial showing that a non-party's website was the source of the Accused Text. However, Sobieski's emphasis on the source of the Accused Text is misleading because liability for false advertising does not require that the defendant have created or used the Accused Text,[6] and evidence regarding the source of the Accused

---

[3] On January 11, 2011, Sobieski moved to withdraw its motion for Rule 11 sanctions as against Gessler's counsel, Christopher L. Deininger and Peter S. Sloane, but proceeded with its claims against Gessler.
[4] Gessler presented to the jury claims for unfair competition, deceptive trade practices, and trademark infringement.
[5] Generally, to establish a false advertising claim under § 43(a) of the Lanham Act, a plaintiff must prove: (1) the existence of a false or misleading commercial statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) there is a likelihood of injury to plaintiff, such as declining sales or loss of goodwill; and (5) the goods traveled in interstate commerce. *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 178 (S.D.N.Y. 2004).
[6] As Gessler points out, Lanham Act liability may be established via vicarious liability, although Gessler did not allege this claim in its First Amended Complaint or expressly plead the elements of such a claim at trial. Gessler additionally argues that while it was unable to discover direct evidence that Sobieski had control over the publication of the Accused Text, it had uncontestable evidence that (1) Sobieski had control over the krupnik product that was the subject of the Accused Text, and (2) Sobieski continued to supply Sobieski's

Text may not have been conclusive.[7]  Prior to filing, Gessler conducted an investigation by observing the proliferation of the Accused Text by retailers of Sobieski's Krupnik, by ordering bottles of Sobieski's Krupnik from New York retailers to verify that the product advertised by the Accused Text was in fact manufactured by Sobieski, and by noting that Sobieski's Krupnik was being advertised in multiple states, with some retailers offering to ship the product across state lines.  At trial, Gessler also presented circumstantial evidence that Sobieski caused the Accused Text to be disseminated in the marketplace,[8] including evidence that Polmos, an entity affiliated with Sobieski,[9] had previously used language similar to the Accused Text in multiple promotional materials, and that Sobieski's Krupnik experienced a sharp increase in sales during 2000-2006 despite Sobieski's claim that it did not engage in advertising.  Resolving all doubts in Gessler's favor, Sobieski fails to show that Gessler's initial investigation was not reasonable under the circumstances, or that its allegation of false advertising was utterly lacking in support.

With respect to Gessler's claim for misappropriation of trade secrets,[10] Sobieski argues that Gessler made no reasonable investigation to determine whether Sobieski was actually using Gessler's Recipe because Gessler failed to consult with an expert or lay witness capable of making such a determination.  However, prior to filing, Gessler was aware that Sobieski had purchased the manufacturing facility which had previously been licensed to produce Gessler's Krupnik, and that Sobieki's retailers were using the Accused Text, which by its own language indicates that Sobieski's Krupnik is manufactured

---

Krupnik to retailers knowing that one or more retailers were using the Accused Text to sell it.  Gessler asserts that based on this evidence, the jury could have found that Sobieski and its retailers were part of a common enterprise to market Sobieski's Krupnik using the Accused Text.

[7] Gessler claims that there is no evidence in the record indicating that the non-party in question originated the Accused Text, and that the non-party unequivocally testified that he had no knowledge of who created the Accused Text.

[8] As Gessler notes, circumstantial evidence "can be sufficient to prove causation in a [Lanham Act] false advertising case just as it can be to prove other propositions."  *Playtex Prods., Inc. v. Proctor & Gamble Co.*, 126 Fed. Appx. 32, 35 (2d Cir. 2005) (finding causation based on evidence that demonstrated market share before and after the advertising campaign, the nature of the market, customer brand loyalty, and other characteristics of the advertising campaign).

[9] Polmos is the now-dissolved Polish liquor monopoly of which Sobieski was once a member and from whom Sobieski had acquired the exclusive rights to the word "krupnik" in Poland.  The Polmos facility, which had previously produced Gessler's Krupnik, now produces Sobieski's Krupnik.

[10] Generally, to establish a misappropriation of trade secrets claim, (1) a claimant must possess a trade secret, and (2) the defendant must be using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.  *See Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990).

according to Gessler's Recipe.[11]  At trial, Gessler also presented evidence supporting its trade secret claim, including: (1) advertisements used by Sobieski's retailers stating that Sobieski's Krupnik was produced according to Gessler's Recipe; (2) evidence that Sobieski's Krupnik was manufactured by the Polmos facility only months after the facility had produced Gessler's Krupnik; (3) evidence that Sobieski had a copy of Gessler's Recipe in its files; and (4) evidence that Sobieski's promotional materials described Sobieski's Krupnik as being manufactured pursuant to an 18th century recipe.[12]  Sobieski fails to show that Gessler's investigation and prosecution of its trade secret misappropriation claim were unreasonable under the circumstances or utterly lacking in support.

With respect to Gessler's trademark infringement claim, Sobieski argues that Gessler failed to conduct an investigation into the Accused Text's effect on the average purchaser, and failed to obtain evidence of actual consumer confusion prior to filing its complaint.  However, Gessler points out that juries have been allowed to conclude actual confusion without the use of surveys.[13]  At trial, Gessler also presented evidence that the Accused Text was false on its face, such that consumer deception may be presumed.[14] Therefore, Sobieski fails to show that Gessler's investigation and prosecution of its trademark infringement claim were unreasonable under the circumstances or utterly lacking in support.

Finally, with respect to Gessler's trademark dilution claim, Gessler's withdrawal of the claim was timely, thereby immunizing Gessler from Rule 11 sanctions as to that

---

[11] Gessler further points out that Sobieski failed to take action or dispute the accuracy of the Accused Text after Gessler called the proliferation of the Accused Text to Sobieski's attention and confronted Sobieski with cease-and-desist letters which included copies of the Accused Text.

[12] Gessler asserts that Gessler's Recipe originates from the 18th century, while Sobieski claims that the recipe for Sobieski's Krupnik dates from 1977.

[13] In *Getty Petroleum Corp. v. Island Transp. Corp.*, the court stated, "the record was sufficient to support a finding of actual confusion without surveys or anecdotal evidence. It clearly revealed that the non-Getty product was sold to consumers under the Getty trademark without any notice or suggestion to them that it was not Getty gasoline. The jury was entitled to use its common sense to reason that purchasers at those stations, who would have no way of knowing the truth, were certainly deceived by and unaware of the substitution."  878 F.2d 650, 656 (2d Cir. 1989).

[14] "When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public."  *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982) (citing *American Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978); *American Brands, Inc. v. R. J. Reynolds Tobacco Co.*, 413 F. Supp. 1352, 1356 (S.D.N.Y. 1976)).

claim.[15]  Because Sobieski fails to meet its burden for Rule 11 sanctions for any of Gessler's claims, Sobieksi's motion for monetary sanctions pursuant to Rule 11 is denied.

### 3.   Adamba's Motion

In its notice of joinder to Sobieksi's motion for sanctions filed on December 5, 2010, Adamba argues for Rule 11 sanctions against Gessler on similar grounds.  Adamba argues that because archived web pages indicate that the website of a non-party importer of Sobieski's Krupnik displayed the Accused Text as early as October 2000, while Adamba did not begin importing Sobieski's Krupnik until 2002, Adamba could not have provided the Accused Text to any of the third-party websites using the Accused Text.  However, Adamba's conclusion does not follow, as it would have been possible for Adamba to provide the Accused Text to other websites at any point following the initial appearance of the Accused Text on the non-party importer's website.  Moreover, Gessler presented circumstantial evidence relating to Adamba's potential connection to the Accused Text, including: (1) a finding that Adamba's name appeared on cartons of Sobieski's Krupnik shipped to the United States as well as on the rear label of each bottle of Sobieski's Krupnik purchased by Gessler in connection with the Accused Text; (2) testimony that anyone ordering or buying krupnik in 2006 and 2007 from New York area retailers in response to the Accused Text would have received Sobieski's Krupnik with a label designating Adamba as the importer; and (3) evidence that Adamba sold at least 12,635 cases of Sobieski's Krupnik in the United States between 2001 and 2007.  While Adamba points out that the connection between importers and retailers is especially tenuous,[16] Adamba nevertheless concedes that it sold some of its products, including Sobieski's Krupnik, directly to consumers through its own website.  Gessler also provided evidence

---

[15] Rule 11(c)(2) states that a motion for sanctions "must not be filed or be presented to the court" if a claim or complaint is "withdrawn or appropriately corrected with 21 days after service [of the Rule 11 sanctions motion]."  Fed. R. Civ. P. 11(c)(2).  Rule 11(c)(2) was designed to create a "safe harbor" period  permitting "a party to escape sanctions by withdrawing an otherwise sanctionable filing within 21 days after being put on notice that sanctions will be sought."  *In re Global Crossing, Ltd. Securities Litigation*, 221 F.R.D. 394 at 396 (S.D.N.Y. 2003); *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449 (E.D.N.Y. 1995).  Here, Sobieski's motion for Rule 11 sanctions was served on Gessler on November 2, 2010, and Gessler did not pursue its trademark dilution claim at trial, which was held on November 8, 2011 through November 12, 2011, thus effectively withdrawing its trademark dilution claim within the 21 day safe harbor period.

[16] Adamba argues that "since only distributors, not importers, sell alcoholic products to retailers, and [as] Adamba is not a distributor, [Gessler] can no longer contend, in good faith, that Adamba sold Sobieski krupnik to third-party website retailers or provided retailers with the Accused [Text]."  *See* 12/05/2010 Def. Adamba's Mem. in Supp. of Notice of Joinder to Def. Sobieski's Mot. for Sanctions at 9.

that prior to July 2007, Adamba and Sobieski were unified by a common financial interest with their U.S. retailers in the sale of Sobieski's Krupnik.[17]  Therefore, Adamba has not met its burden to show that it was not objectively unreasonable for Gessler to plead and prosecute its claims against Adamba, and Adamba's motion for monetary sanctions pursuant to Rule 11 is denied.[18]

## B.  Motions for Attorneys' Fees under the Lanham Act

### 1.  Legal Standard

Section 35(a) of the Lanham Act allows the court to award "reasonable attorneys' fees" in "exceptional cases," and provides a narrow exception to the American Rule that each party must bear its own attorneys' fees.  15 U.S.C. § 1117(a).  To satisfy the "exceptional" threshold under the Act, the Second Circuit requires the prevailing party to show fraud or bad faith on behalf of its opponent in bringing or prosecuting the suit.[19] *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996) (citing *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993)).  While a finding of bad faith is necessary for an award of attorneys' fees, the court may still exercise discretion in imposing fees upon a finding of bad faith.  *Protection One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 208 (E.D.N.Y. 2008) (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir.

---

[17] Gessler claims that this evidence, along with evidence that the sale of krupnik increased during the time period when the Accused Text was used, is sufficient for the jury to find Adamba vicariously liable pursuant to a common enterprise scheme involving Sobieski and its retailers to market krupnik in the U.S. using the Accused Text.  However, Gessler did not present a theory of vicarious liability in its First Amended Complaint and did not expressly present such a claim at trial.

[18] Gessler additionally argues that Adamba's moving papers are willfully defective pursuant to Local Rule 7.1(a), which states, in relevant part, "all motions . . . shall be supported by a memorandum of law setting forth the points and authorities relied upon in support of . . . the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for denial of a motion."  Local Civil Rule 7.1(a).  Specifically, Gessler points out that Adamba's moving papers consist solely of record citations followed by attorney commentary, and fail to cite the standard(s) under Rule 11(b) that Gessler purportedly violated.  Gessler also points out that Adamba's motion was filed on December 5, 2010, approximately one month before Sobieski filed the motion on which Adamba seeks to rely.  Given that Adamba's arguments are justifiably linked to Sobieski's arguments, which have been presented in greater detail, and given that Adamba's motion presents a substantive legal claim, the court reviews Adamba's motion on the merits.

[19] The Second Circuit has held that the standard for awarding attorneys' fees to a prevailing defendant is the same as to a prevailing plaintiff. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir.1996).  Therefore, in cases where the defendant prevails, the defendant has the burden of proving the plaintiff's bad faith: "[The defendant] claims that the district court erred in requiring it to demonstrate bad faith on the part of [the plaintiff] in order to recover attorneys' fees. Despite [the defendant's] argument…[n]othing in any [ ] Lanham Act case in this Circuit indicates that a different standard should apply for prevailing plaintiffs and prevailing defendants." *Id.* at 194-95.

1996)).  Defendants argue that Gessler's bad faith was evinced in a variety of ways, including by Gessler's improper purpose in bringing and prosecuting the suit, the meritlessness of Gessler's claims, and Gessler's decision to sue Adamba as a means of gaining jurisdiction.  These three arguments will be addressed in turn.

**2.  Bad Faith Based on Improper Purpose**

Precedent indicates that "[c]ourts generally award fees to defendants in trademark infringement suits only after the evidence at trial demonstrates an improper purpose." *Gamla Enters. N.A., Inc. v. Lunor-Brillen Design U. Vertriebs GmBH*, 98 Civ. 992, 2000 WL 193120, at *4 (S.D.N.Y. Feb. 17, 2000).  In *Mennen Co. v. Gillette Co.*, the defendant used the trade dress at issue for five years before its rival brought suit, and the court awarded attorneys' fees to the defendant after trial based on its finding that "[t]here is a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy."  565 F. Supp. 648, 652, 657 (S.D.N.Y. 1983).  Similarly, the Second Circuit in *Universal City Studios, Inc. v. Nintendo Co.* followed *Mennen* by upholding a fee award based on the district court's finding after trial that the plaintiff brought infringement claims merely to "serve ulterior business motives" rather than any "sincere belief in the merits of the underlying claims." 615 F. Supp. 838, 864 (S.D.N.Y. 1985), *aff'd,* 797 F.2d 70 (2d Cir. 1986).  There, the plaintiff sought to strengthen its position in negotiations with a licensee and join in a stream of profits from the defendant's highly successful video game.  *Id.* at 77.

In the instant case, Sobieski argues that Gessler had an improper purpose in bringing suit based on Gessler's alleged ulterior business motives.  First, Sobieski asserts that Gessler's suit was initiated as part of a competitive ploy prompted by Gessler's frustration with its failed business dealings in Poland.  As evidence, Sobieski points to a 2006 business meeting during which Gessler met with Sobieski to discuss whether Baczewski products, including Gessler's Krupnik, could be sold in Poland, but where Gessler discovered that Sobieski had already purchased exclusive rights to produce krupnik in Poland.  Second, Sobieski argues that Gessler used the suit to leverage a "windfall" settlement from Sobieski and to force Sobieski to make business concessions, which Sobieski concludes were based on Gessler's "unreasonable rejection of Sobieski's

settlement offers."[20]  However, Gessler has provided reasonable explanations for why the
Court should not infer bad faith from these arguments.  First, Gessler points out that the
2006 business meeting was one which Sobieski initiated, and during which Sobieski had
sought solely to advise Gessler that it could not use the term "krupnik" to market a honey
liqueur product that Gessler had been making and marketing for decades.  Second, Gessler
argues that its rejection of Sobieski's settlement offer was based on Gessler's assessment
of the terms of the offer itself.  In light of Gessler's explanations, there seems little reason
to infer ulterior business motives based on either the 2006 meeting or Gessler's rejection of
Sobieski's settlement offer, and therefore I find insufficient evidence of improper purpose
to warrant a finding of bad faith.

### 3.  Bad Faith Based on Pursuit of Meritless Claims

Courts have also awarded attorneys' fees where a plaintiff's claims were found to
be especially lacking in merit.  In *Viola Sportswear, Inc. v. Mimun*, the court awarded fees
where plaintiffs alleged a "nationwide trademark conspiracy based upon the discovery of
one pair of jeans worth $10."  574 F. Supp. 619, 620-21 (E.D.N.Y. 1983).  In granting
summary judgment and attorneys' fees, the court concluded that "[o]ne can only speculate
about the motives which prompted this suit and in doing so none that are laudable come
readily to mind." *Id.*; *see also Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F.
Supp. 470, 476 (S.D.N.Y. 1984) (noting after trial that "plaintiff's assertion of this action
against [the defendant] was so patently baseless that it does present 'an exceptional case,'"
and concluding that the plaintiff's lawsuit constituted bad faith and harassment); *IMAF
S.p.A. v. J.C. Penney Co., Inc.*, 810 F. Supp. 96, 100 (S.D.N.Y. 1992) (noting that bad faith
can be found by an "absolute failure to make a sincere attempt validly to establish an
essential element of a section 43(a) claim" in relation to the plaintiff's failure to produce
survey evidence or any other type of evidence to show consumer confusion); *New Sensor
Corp. v. CE Distribution LLC*, 367 F. Supp. 2d 283, 287-88 (E.D.N.Y. 2005) (noting that
"pursuit of patently frivolous claims is circumstantial evidence of bad faith," the plaintiff
"knew or should have known that its claims were not well grounded in fact," and "one can
only speculate about the motives which prompted its suit.").  The mere fact that a plaintiff

---

[20] Sobieski offered to settle in exchange for a substantial cash payment or an agreement to distribute various
products, including Sobieski's Krupnik but excluding Sobieski's vodka, and Gessler alleges that it rejected
Sobieski's offers because it was interested only in Sobieski's vodka or payment of a more significant sum.

did not ultimately succeed in its Lanham Act claims does not necessitate a finding of bad faith. *E.g., Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) (per curium) ("The present litigation may not have been strong enough on the merits but raised enough nonfrivolous claims to preclude the awarding of fees."). Rather, in cases where courts have found bad faith based on the meritlessness of a plaintiff's claims, "[t]he circumstances were generally such . . . that a court could draw no inference other than that the actions had been brought for improper purposes." *Multivideo Labs., Inc. v. Intel Corp.*, 99 Civ. 3908, 2000 WL 502866, at *2 (S.D.N.Y. Apr. 27, 2000).

      Here, Sobieksi contends that Gessler's suit is meritless due to the insufficiency of Gessler's evidence regarding Sobieski's connection to the Accused Text. However, Sobieski's argument fails for reasons similar to those outlined under the Rule 11 analysis. Specifically, Gessler provided circumstantial evidence supporting Sobieski's connection to the Accused Text such that its claim was not completely without merit.

      Sobieski also contends that Gessler's lack of evidence on consumer confusion and secondary meaning warrants a finding of bad faith. However, as Gessler points out, consumer deception is presumed when an advertisement is shown to be facially false, and "the court may grant relief without reference to the advertisement's [actual] impact on the buying public." *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982). Because Gessler presented evidence supporting the facial falsity of the Accused Text, further demonstration of consumer confusion may not have been necessary.[21] Additionally, while Gessler's trademark registrations containing the word "Baczewski" may not be dispositive of secondary meaning,[22] Gessler provided additional evidence of

---

[21] The advertisement at issue depicts a bottle of Sobieski's Krupnik and states in close proximity to the bottle, *inter alia*: "Once produced by the famous Baczewski Distillery of Lwow, Poland, Krupnik is produced today according to its original recipe by Starogard Distilleries of Gdansk." *See* Amend. Compl. at ¶ 48. Yet, Sobieski testified that the Sobieski Krupnik pictured in the ad was not in fact "once produced by the famous Baczewski Distillery of Lwow, Poland," and further indicated that the Sobieski Krupnik advertised in the Ad is not produced today "according to its original [Baczewski Distillery] recipe," nor by the "Starogard Distilleries of Gdansk." Trial Transcript, at p. 126-127, 227-280.

[22] While the contested mark consists solely of "Baczewski," Gessler holds trademark registrations for "Altvater-Gessler-J.A. Baczewski" and "J.A. Baczewski," the latter of which was issued in 2008, two years after Gessler filed suit, and which was never included as part of Gessler' amended pleading. Moreover, the Trademark Trial and Appeal Board has held that the surname component of a mark comprising an entire personal name is not necessarily the dominant portion of the mark. *In re P.J. Fitzpatrick, Inc.*, Serial NO. 77256618 (T.T.A.B. June 11, 2010). In addition, a personal name mark, unless it is primarily a surname, is registrable on the Principal Register without a showing a secondary meaning. *Brooks v. Creative Arts by*

secondary meaning at trial.[23]   Therefore, Gessler presented enough evidence on both consumer confusion and secondary meaning such that its claims of injury under the Lanham Act were not completely without merit.

**4.   Bad Faith Based on Baseless Attempt to Gain Jurisdiction**

Adamba moves to join Sobieski's motion for attorneys' fees under § 35(a) of the Lanham Act on the grounds that Gessler's allegations regarding Adamba's connection to the Accused Text are too tenuous to have merit.  This argument is again unconvincing for reasons examined under the Rule 11 analysis, namely, that Gessler presented circumstantial evidence supporting Adamba's connection to the Accused Text such that its claim was not completely baseless.

Both Adamba and Sobieski additionally argue that Gessler's admission that it brought suit against Adamba in part to gain jurisdiction in New York is itself indicative of Gessler's bad faith.  For example, in *Textile Deliveries, Inc. v. Stagno*, the court declined to find bad faith within the meaning of 15 U.S.C. § 1117(a) because it was "satisfied that [the plaintiff's] failure to [present sufficient evidence at trial] was not a result of bad faith or a baseless and capricious attempt to gain federal jurisdiction," thereby suggesting that bad faith may be found when a party brings suit as part of a baseless attempt to gain jurisdiction.  *Textile Deliveries, Inc. v. Stagno*, 90 Civ. 2020, 1994 WL 202620, at *1 (S.D.N.Y. May 23, 1994).  However, Gessler contends that it brought suit against Adamba because, as an importer of Sobieski's Krupnik, Adamba had control over the product that was the subject of the Accused Text.  Also, while Gessler could theoretically have tried to chase down multiple parties in multiple jurisdictions, it instead elected to focus its limited resources on the supply chain of the product, as importers of liquor and cordials are generally responsible for promoting such products and are often contractually obligated to do so.[24]   Under these circumstances, this Court will not infer bad faith here based on an

---

*Calloway LLC*, 98 U.S.P.Q.2d 1823, 1828-1829 (T.T.A.B. 2010).   Therefore, Gessler's two trademark registrations are not necessarily dispositive of secondary meaning.

[23] Among other things, Gessler showed that it was the exclusive United States owner of registered trademarks incorporating the word "Baczewski," that the Baczewski name has been used extensively in connection with Gessler starting in 1782 through present day, and that retailers on two continents considered "famous" Gessler's "Baczewski Distillery" in Lwow, Poland.

[24] Gessler also points out that any court precedent which prevents Gessler from suing importers would "necessarily insulate foreign manufacturers and their domestic importers from Lanham Act liability where parties may simply claim innocence or ignorance of the false advertisements from which they stand to profit."  *See* 12/31/10 Pl.'s Mem. in Opp'n to Mot. for Attorney's Fees at 10.

attempt to establish jurisdiction.  For all the above reasons, the Defendants' motions for attorneys' fees and costs pursuant to § 35(a) of the Lanham Act are denied.

**C.  Motion for Attorneys' Fees and Costs under Rule 68**

In addition to seeking attorneys' fees under the Lanham Act, Adamba seeks a partial recovery of attorneys' fees and costs pursuant to Rule 68 in relation to its October 8, 2010 offer of judgment to Gessler.  In *Delta Air Lines, Inc. v. August*, the Supreme Court held that Rule 68 "applies only to offers made by the defendant and only to judgments obtained by the plaintiff."[25]  450 U.S. 346, 352 (1981).  Here, Gessler did not prevail on any of its claims, and Rule 68 is therefore not applicable.  Accordingly, Adamba motion for attorneys' fees and costs under Rule 68 is denied.

**D.  Motions for Costs**

**1.  Legal Standard**

Pursuant to Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorneys' fees-should be allowed to the prevailing party."[26]  Fed. R. Civ. P. 54(d)(1).  Additionally, "because 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception."  *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001) (quoting *Mercy v. Cnty. of Suffolk*, 748 F.2d 52, 54 (2d Cir. 1984)).  Due to the strong presumption that costs are awarded to the prevailing party, the losing party bears the burden of convincing the district court to exercise its discretion in denying an award of costs.[27]  *Id.*

---

[25] The court stated, "[Rule 68] therefore is simply inapplicable to this case because it was the defendant that obtained the judgment."  *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  Justice Powell, concurring in the result, noted that the court's holding implies that "a defendant may obtain costs under Rule 68 against a plaintiff who *prevails in part* but not against a plaintiff who *loses entirely*."  *Id.* at 362 (Powell, J., concurring) (emphasis in original).

[26] The Supreme Court interprets "costs" in Rule 54(d)(1) to mean only those categories of costs enumerated in 28 U.S.C. § 1920.  *See Crawford Fitting Co, v. J.T. Gibbons, Inc.,* 482 U .S. 437, 441 (1987).  Local Civil Rule 54.1 further details those costs which are taxable in the Southern District of New York.

[27] In exercising discretion, a district court is free to consider a variety of equitable factors, including "misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources," but if the district court chooses to exercise its discretion by refusing to tax costs in favor of the prevailing party, it must articulate reasons for doing so. *See Whitfield v. Scully*, 241 F.3d 264, 270.

2. **Adamba's Motion for Taxable Costs for Deposition Transcripts**

The cost of an original deposition transcript and one copy is taxable "if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety." Local Civ. R. 54.1(c)(2).  Additionally, costs of depositions not used at trial are still taxable under 28 U.S.C. § 1920 if they "appear to have been reasonably necessary to the litigation at the time they were taken."  *Malloy v. City of New York*, 98 Civ. 5823, 2000 WL 863464, at \*2 (E.D.N.Y. June 23, 2000) (internal quotation marks and citations omitted).  Therefore, "the proper inquiry is whether, at the time the deposition was taken, it appeared to be reasonably necessary."  *Anderson v. City of New York,* 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001) (internal quotation marks omitted).

Here, Adamba seeks to tax costs in the amount of $1,330.20 for the deposition transcripts of Kazimierz Zimny, Ryszard Bilski, and Rasiel Gessler pursuant to Fed. R. Civ. P. 54(d)(1), which Adamba declared were necessary because they were either used in opposition to a motion to dismiss or used during trial.  Gessler does not contest that these depositions were necessary or that these costs are taxable, and because the taxable costs that Adamba requests here are both reasonable and conventionally awarded, Adamba will be permitted to recover taxable costs in the amount of $1,330.20.

3. **Sobieski's Motion for Non-Taxable Costs for Trial Consultants**

Sobieski also moves for recovery of non-taxable costs in the amount of $51,600.36 for the cost of trial technology consultants used to develop and present exhibits pursuant to Local Civ. R. 54.1(c),[28] which provides that "[c]osts of maps, charts, and models, including computer generated models, are not taxable except by order of the court." According to the local rule, it would appear that the Court has discretion to award Sobieski these costs.  *See Diabella v. Hopkins*, 407 F. Supp. 2d 537, 539-40 (citations omitted). While Gessler counters that a discretionary award of costs relating to trial presentation

---

[28] The sum of $51,600.36 includes $37,061.61 for the services of Resonant Legal Media and $14,538.75 for Becoming Partners, both trial consulting firms.  Becoming Partners was responsible for designing and producing the demonstrative computer graphics that were used during the opening and closing statements, many of which incorporated information from admitted exhibits, admitted exhibits themselves and excerpts of deposition and trial testimony.  Resonant Legal Media was responsible for digitizing trial exhibits and deposition testimony, and displaying and highlighting on the screen to the jury the admitted trial exhibits as well as the computer-graphic demonstrative exhibits.

technology would exceed the scope of the word "costs" in Rule 54,[29] this Court has made allowances when the use of technology has served the same function as exhibits and other papers used at trial.  *See, e.g.*, *Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd.*, No. 09 Civ. 2570, 2009 WL 5173787 at *8 (S.D.N.Y. Dec. 30, 2009) (allowing prevailing defendant a partial recovery of expenses for trial consultants who prepared the bulk of the trial graphics presented at trial, where the visual aids were helpful to the bench and jury), *aff'd*, No. 10 Civ. 0384, 2011 WL 2618722 (2d Cir. July 05, 2011).[30]  Here, the visual aids presented at trial were helpful to the jury and the court by focusing attention on the salient documents and concepts.  Upon a review of the itemized invoices for these services, the court finds $51,580.00 to be supported by the invoices that Sobieski paid, and Sobieski is entitled to recover $50,000 as reasonable costs.

### 4.  Sobieski's Bill of Costs

On December 17, 2010, Sobieski submitted a taxable Bill of Costs to the Clerk of the Court in the amount of $63,540.32, which was adjusted downward to $29,199.89 after a review of Gessler's written objections submitted pursuant to Local Civ. R. 54.1(b).  Since Sobieski has not filed any timely motion objecting to these adjustments, Sobieski is entitled to the adjusted amount of $29,199.89 in taxable costs.

### E.  Motions for Leave to Withdraw as Counsel

In addition to Defendants' above motions, attorneys Jason M. Sobel, Matthew B. McFarlane, and William J. Seymour moved to withdraw as counsel for Sobieski on February 10, 2011 pursuant to Local Civ. R. 1.4.  Sobieksi has continuity of counsel

---

[29] "[T]he U.S. Supreme Court has interpreted the word 'costs' in Rule 54(d)(1) to mean *only* those categories of costs enumerated in 28 U.S.C. § 1920."  *Carmody v. City of New York*, 05 Civ. 8084, 2008 WL 3925196, at *1 (S.D.N.Y. Aug. 26, 2008).  Categories include: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees pursuant to 28 U.S.C. § 1923; and (6) compensation of court appointed experts, interpreters, and fees, expenses, and costs of special interpretation services pursuant to 28 U.S.C. § 1828.

[30] "[B]low-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no logical reason to differentiate between the former and the latter in terms of their taxability as costs." *Diabella v. Hopkins*, 407 F. Supp. 2d 537, 540.  Because the use of technology improves the presentation of information to the jury and the bench, and because such tools have become important to the modern-day trial lawyer, "[a]s long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party should be allowed to recover their expense." *Id.*

14

through lead trial counsel Ronald Daignault and consents to these withdrawals. Accordingly, all three motions are granted.

### III.   CONCLUSION

For the foregoing reasons, the Defendants' motions for sanctions and attorneys' fees are DENIED, and Sobieski's motion to withdraw its sanctions motion as against Gessler's counsel is GRANTED. The Defendants' motions for costs are GRANTED in part in accordance with this opinion. Accordingly, the Clerk of the Court is instructed to assess costs in favor of Adamba in the amount of $1,330.20, and costs in favor of Sobieski in the amount of $79,199.89 (which includes $50,000 for reasonable trial technology costs and $29,199.89 from the Bill of Costs). The three motions to withdraw as counsel for Sobieski are GRANTED. The Clerk of this Court is instructed to close all open motions and remove this case from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**July ⬛, 2011**

U.S.D.J.

15